VIOLET I. TAYLOR *vs.* CHARLES K. BADGER.

Suffolk.    November 17, 1916. — March 5, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Attachment,* Dissolution.    *Judgment,* Entry *nunc pro tunc,* Of Probate Court. *Executor and Administrator.    Probate Court.*

The provision of R. L. c. 167, § 112, that "An attachment of real or personal property shall be dissolved if the debtor dies before it is taken or seized on execution and administration of his estate is granted in this Commonwealth upon an application therefor made within one year after his decease," applies to cases where land that had been attached was sold by the owner after the attachment and before his death, and where the attachment, the alienation and the death of the grantor all occurred before the enactment of St. 1913, c. 305.

The attempted entry of a judgment *nunc pro tunc* cannot operate to revive an attachment that was dissolved under R. L. c. 167, § 112, by the death of the defendant about five and a half years before such entry.

Assuming that a total lack of assets on the part of an intestate will make void the appointment of an administrator of his estate, where this point is directly in issue and the fact is proved, yet under R. L. c. 162, § 2, a decree of the Probate Court appointing an administrator cannot be attacked collaterally on such a ground.

BILL IN EQUITY, filed in the Superior Court on February 9, 1916, seeking to remove a cloud on the plaintiff's title to one undivided fifth interest in a parcel of land in Chelsea.

In the Superior Court the case was tried before *Fox,* J. The material facts are stated in the opinion. The judge made a memorandum of decision which contained the following statements:

"The defendant's title rests upon an execution sale made in 1914, by which a futile attempt was made to bring to life an attachment which under R. L. c. 167, § 112, had been dead for four years.

"There is nothing in the defence of laches. There has been no change in the situation. The land was vacant in 1914, and is vacant still. Nothing has been put upon it but tax titles. A verbal assertion of adverse title cannot work a disseizin in thirteen months."

The judge made a decree for the plaintiff; and the defendant appealed.

R. L. c. 167, § 112, is as follows: "An attachment of real or personal property shall be dissolved if the debtor dies before it is taken or seized on execution and administration of his estate is granted in this Commonwealth upon an application therefor made within one year after his decease. The attaching officer shall also, upon demand, and upon receiving from the executor or administrator of such debtor so appointed his legal fees and charges for attaching and keeping the property attached by him, deliver it to such executor or administrator."

St. 1913, c. 305, is as follows:

"Section 1. An attachment of real or personal property shall be dissolved if the debtor dies before it is taken or seized on execution and administration of his estate is granted in this Commonwealth upon an application therefor made within one year after his decease. The attaching officer shall also, upon demand, and upon receiving from the executor or administrator of such debtor so appointed his legal fees and charges for attaching and keeping the property attached by him, deliver it to such executor or administrator. But no attachment of property, real or personal, shall be so dissolved upon that part of the property which the debtor had alienated before his decease.

"Section 2. This act shall take effect upon its passage.

"Approved, March 19, 1913."

R. L. c. 162, § 2, is as follows: "The Probate Courts shall be courts of superior and general jurisdiction with reference to all cases and matters in which they have jurisdiction, and it shall not be necessary for any order, decree, sentence, warrant, writ or process which may be made, issued or pronounced by them to set out any adjudication or circumstances with greater particularity than would be required in other courts of superior and general jurisdiction, and the like presumption shall be made in favor of proceedings of the Probate Court as would be made in favor

of proceedings of other courts of superior and general juris-
diction."

*J. F. Gadsby,* for the defendant.

*Jere J. McCarthy,* for the plaintiff.

RUGG, C. J. This is a bill in equity to remove a cloud upon
the title to real estate. The significant facts and dates are that
on and before December 10, 1908, James McCarthy was owner
of an undivided part of real estate in Chelsea. On that date his
interest therein was attached on a writ in favor of Mary Gadsby.
On February 19, 1909, in good faith and for valuable consideration
he conveyed by deed free from incumbrances his undivided part
in this land to William L. Davis. James McCarthy died intestate
on March 23, 1909. Administration on his estate was granted on
April 22, 1909, by the Probate Court of the County of Suffolk.
The Gadsby writ against James McCarthy was duly entered in
court, the defendant was defaulted on December 29, 1908, but
there was no judgment until, on September 15, 1914, it was
ordered that judgment be entered *nunc pro tunc* as of March 19,
1909. Execution issued on October 13, 1914, as of March 19,
1909. The form of a levy and sale on this execution was had,
although the Superior Court judge found as a fact that the price
alleged to have been paid was not paid. The defendant asserts
title through deed from the purchaser at such sale. The plaintiff
acquired the title of Davis in 1916.

The attachment of McCarthy's interest in the land made on
the Gadsby writ was dissolved by the death of McCarthy before it
had been taken or seized on execution and the appointment of an
administrator of his estate within a year thereafter. R. L. c. 167,
§ 112. The contention that this section does not apply to cases
where the land has been sold by the owner subsequent to the at-
tachment but before his death cannot be supported. The words
of the statute are plain and unequivocal. They are sweeping and
unqualified. Doubtless the main purpose of this statute was, as
has been said in many cases, to facilitate the orderly adminis-
tration of the estate of a deceased person and to permit all his
property to come into the control of his personal representative
for distribution among all his creditors on the basis of equality
without hindrance from lien attachments. There is no inherent
equity in favor of the attaching creditor, in instances where real

estate has been alienated subsequently by the owner, as compared with instances where there has been no such alienation. If it has been conveyed, presumably the estate of the decedent has received the benefit of the consideration. There is no reason to presume that the Legislature intended an exception to be read into its unambiguous words.

The second sentence of § 112 does not limit the broad and clear declaration of the first sentence. It rather is ancillary in the cases to which it is applicable to the preceding dominant provision.

This conclusion is required beyond question by previous decisions. *Bullard* v. *Dame*, 7 Pick. 239, 242. *Parsons* v. *Merrill*, 5 Met. 356. *Wilmarth* v. *Richmond*, 11 Cush. 463. See also *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 6, wherein it also was held that St. 1913, c. 305, could have no effect upon a case like the present where the attachment, alienation and death of grantor occurred before it was enacted.

There is nothing out of harmony with this result in the decision or the reasoning in *Rioux* v. *Cronin*, 222 Mass. 131, 138, and in *Dunbar* v. *Kelly*, 189 Mass. 390. Those cases related to attachments of property subsequently conveyed in fraud of creditors by the owner who later died. What was said in those opinions was directed to those facts and is not to be distorted into other connections. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 545.

The clear provision of the statute declaring the attachment dissolved could not be thwarted by the attempted entry of a *nunc pro tunc* judgment in 1914, after the attachment had been dissolved for several years. The function of judgments *nunc pro tunc* does not extend to the preservation of attachments in instances like this. See *Perkins* v. *Perkins*, 225 Mass. 392.

The judge found that there was no laches on the part of the petitioner. An examination of the evidence shows that this finding was too plainly right to admit of discussion.

It has been argued that there was no real or personal property of James McCarthy as the basis for the appointment of an administrator of his estate in 1909. Whatever may be the effect of a total lack of assets of the decedent on the appointment of an executor or administrator, in proceedings where that point is directly in issue and the fact is proved, *Harrington* v. *Brown*, 5 Pick. 519,

522, *Pinney* v. *McGregory*, 102 Mass. 186, 189, it is plain that an appointment of an administrator made by a Probate Court, now by R. L. c. 162, § 2, a court of superior and general jurisdiction, having jurisdiction of the cause, cannot be attacked collaterally. *Tobin* v. *Larkin*, 187 Mass. 279, 282. *McCooey* v. *New York, New Haven, & Hartford Railroad*, 182 Mass. 205. *Dallinger* v. *Morse*, 208 Mass. 501, 505. That principle applies to this argument.

*Decree affirmed with costs.*